**SO ORDERED.**

**SIGNED this 3 day of December, 2013.**



_____
A. Thomas Small
United States Bankruptcy Court Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

BRENDA KAREN PEAK,                    CASE NO. 12-01524-8-ATS
    DEBTOR.                           CHAPTER 7

_____

ENTRUST ADMINISTRATION OF
THE SOUTHEAST, INC., ET AL,
    PLAINTIFFS,

v.                                    ADVERSARY PROCEEDING
                                      NO. 12-00126-8-ATS

BRENDA KAREN PEAK,
    DEFENDANT.


**MEMORANDUM OPINION DETERMINING DISCHARGEABILITY OF DEBT**

This is an adversary proceeding to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(2)(A), and is a core proceeding under 28 U.S.C. § 157(b)(2)(I) that this court has jurisdiction to hear and determine pursuant to 28 U.S.C. §§ 151, 157(a), and 1334(b) and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. The trial was held on November 6, 2013, in Raleigh, North Carolina.

1

The defendant, Brenda Karen Peak, filed a petition for relief under chapter 7 of the Bankruptcy Code on February 28, 2012. On June 25, 2012, plaintiffs Entrust Administration of the Southeast, Inc., Dwayne LeBlanc, Jannine LeBlanc, Dan Sinisi, Linda Sinisi, Donny Joe Slayton, and Christi Slayton filed this adversary proceeding to determine the dischargeability of a debt pursuant to § 523(a)(2)(A). Previously, on October 13, 2011, the plaintiffs obtained a default judgment in the Superior Court for Wake County North Carolina against Ms. Peak and her corporation Brenda Peak, LLC in the amount of $744,578.11, plus ten percent interest from the date of the judgment. Both Brenda Peak and Brenda Peak, LLC are jointly and severally liable for the state court judgment.

On August 20, 2013, this court denied the plaintiffs' motion for summary judgment, but, based on the state court default judgment, the court significantly narrowed the issues for trial. The court determined that the plaintiffs established the personal liability of the defendant for the debt and found several elements of fraud: that the defendant made a false representation, that the plaintiffs justifiably relied on that representation, and that the representation was the proximate cause of the damages. The only issues remaining in dispute, and therefore the only issues for trial, are whether Brenda Peak knew

that the representation was false when she made it and whether she intended to deceive the plaintiffs.

Ms. Peak is a homebuilder with more than twenty years experience who specializes in building expensive high quality homes. Much of her business was done through her wholly owned limited liability company, Brenda Peak, LLC. Typically, she financed the construction of the houses she built through bank construction loans, but like so many home builders had difficulty getting bank financing during the economic downturn. She was approached by a financial adviser, Steve Peters, who said he had some clients who might be interested in funding her business. Mr. Peters put together a private placement arrangement pursuant to which his clients would lend $600,000 to Brenda Peak LLC with the personal guarantee of Brenda Peak individually. The arrangement is described in a confidential private placement memorandum ("PPM") prepared by Mr. Peters and dated October 10, 2008. The PPM is vague, and it contains few financial details and an apparently unworkable business model. The PPM is the document that this court, based on the default judgment, found was false and was relied upon by the plaintiffs.

The primary business objective of the LLC stated in the PPM was "to acquire, at a discount, ownership interests in real estate with current or imminent cash flow," and secondarily, "to own first priority liens on real property, other tangible assets,

or ownership interests in real estate." Plaintiffs' ex. 2. According to the PPM the LLC would "have no meaningful business operations other than to make the ownership interest acquisitions." Plaintiffs' ex. 2. Investors were to earn a return of ten percent of their investments.

Dwayne and Jannine LeBlanc testified that they made their investments based on the business objectives stated in the PPM, which they characterized as "buying low and selling high" – the dream of every investor. The LeBlancs, who made three separate investments into Brenda Peak, LLC, totaling $160,000, i.e. $50,000 from Mr. LeBlanc's IRA in October 2008, $50,000 from Mrs. LeBlanc's IRA in December 2008, and a final investment of $60,000 in June 2009, understood the representations in the PPM to mean that their investments would only be used to purchase land. They believed that the arrangement reduced their risk because the LLC would own land or hold notes secured by land. Ms. Peak, however, had no intention of buying land or lending money secured by real property. She wanted to continue to build houses and viewed the investment as a loan to her home building business. When he met with the debtor, Mr. Leblanc was interested in learning about her building business. He had become involved in a cabinet making enterprise and wanted to learn how Ms. Peak paid her subcontractors and was hoping that his involvement with Ms. Peak might lead to some cabinet business. The focus of their

4

meeting was on home building, not investing in land in a down market or in making loans to other builders.

The funds that were loaned by the plaintiffs were not used to purchase land. Over the two-year period following the initial debt offering Brenda Peak, LLC did not acquire any real property. In that time, Brenda Peak, LLC completed work on two spec homes. This work was done on previously-acquired lots with funds from a construction loan. After receiving the initial loan in October 2008, the defendant transferred funds from the LLC to herself and to SilverCrest Homes Brenda Peak LLC, a separate and distinct company. The transfers between her personal account, the Brenda Peak, LLC account, and the SilverCrest Homes account were to repay money loaned between the companies. Deposits of some of the loan proceeds into the wrong account were explained as errors made by Ms. Peak's bookkeeper that were corrected upon discovery.

Ms. Peak testified that she never read the PPM, but an email she sent to Mr. Peters suggests otherwise. Plaintiff's ex. 3. But, whether or not she read the document she is responsible for the PPM's content. The information was false and her inattention to what the PPM provided is the same as knowing that the document was false. Whether she intended to deceive the defendants, however, is another matter.

Ms. Peak was a builder and had no experience speculating in land purchases or in lending money to other builders.

5

Furthermore, the plan described in the PPM made little business sense. In a down market it is certainly possible to purchase real property at depressed prices, but selling those properties in a down market at a profit, or selling them at all, is difficult. Additionally, the investment was structured as a loan that required monthly payments which would be problematic to make unless the property purchased was income producing. Again, Ms. Peak was a builder, not a landlord or the owner of income producing property. The only realistic way she could repay the loan was by doing what she did best, build houses.

    Ms. Peak testified that she did not believe that the funds could only be used to purchase land, and that belief is consistent with her contacts with the LeBlancs and with their financial adviser Peters. The debtor did not solicit the loans from the plaintiffs, their financial adviser solicited her. She was not familiar with a private placement memorandum and if anything was told by Peters that it was for her benefit. See Plaintiffs ex. 3 (email from Peters to Peak ". . . but trust me this is designed to protect you. It is telling the investor ... 'Hey, you know what you are getting into when you invest in this investment.'"). The PPM was false and was relied on by the plaintiffs in making the loan, but the court finds that the defendant, Brenda Peak, did not intend to defraud the investors. She believed she could use the funds to continue her building

6

business and to repay the loan. Unfortunately, for everyone she was unable to pay the $600,000 obligation. The plaintiffs lost the money they loaned and Ms. Peak became a chapter 7 debtor.

## DISCUSSION

Section 523(a)(2)(A) of the United States Code, provides that a debt is nondischargeable if it is a debt

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). The burden is on the creditor to establish each element by a preponderance of the evidence. O'Connor v. Booker (In re Booker), 165 B.R. 164, 168 (Bankr. M.D.N.C. 1994). As discussed above, the only questions that remain before the court are whether the defendant knew that the representation was false and whether she made the representation with the intent to deceive.

The plaintiffs have met their burden of proving all required elements under § 523(a)(2)(A) except the defendant's intent to deceive. Accordingly, the debt is dischargeable and an appropriate order will be entered.

**END OF DOCUMENT**