UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-74-BR

| | | |
|---|---|---|
| ENTRUST ADMINISTRATION OF THE SOUTHEAST, INC., *et al.*, | ) ) ) | |
| Appellants, | ) ) | |
| v. | ) ) | ORDER |
| BRENDA KAREN PEAK, | ) ) ) | |
| Appellee. | ) | |

     Before the court is an appeal by Entrust Administration of the Southeast, Inc., Dwayne LeBlanc, Jannine LeBlanc, Dan Sinisi, Linda Sinisi, Donny Joe Slayton, and Christi Slayton ("appellants") from the 3 December 2013 order of United States Bankruptcy Judge A. Thomas Small. Appellants contend that the bankruptcy court erred in concluding that the debt owed to them by appellee Brenda Karen Peak ("Peak") is dischargeable in bankruptcy. For the reasons set forth below, the decision is affirmed.

## I. BACKGROUND[1]

     Peak is a homebuilder with more than twenty years experience who specializes in building expensive high quality homes. Much of her business was done through her wholly-owned limited liability company, Brenda Peak, LLC. Typically, she financed the construction of the houses she built through bank construction loans, but, like so many home builders, she had difficulty getting bank financing during the economic downturn. As a result, on 10 October 2008, Brenda Peak, LLC made a $600,000 secured debt offering pursuant to a private placement memorandum ("PPM"), with the personal guarantee of Peak individually.

---

[1] The facts are taken primarily from the bankruptcy court's 3 December 2013 order.

The primary business objective of Brenda Peak, LLC stated in the PPM was "to acquire, at a discount, ownership interests in real estate with current or imminent cash flow," and secondarily, "to own first priority liens on real property, other tangible assets, or ownership interests in real estate." (12/3/13 Order, DE # 1-1, at 3-4 (citation and internal quotation marks omitted).) According to the PPM, the company would "have no meaningful business operations other than to make the ownership interest acquisitions." (Id. at 4 (citation and internal quotation marks omitted).) Investors were to earn a return of ten percent on their investments.

Appellants loaned money to Brenda Peak, LLC pursuant to the PPM, but those funds were not used to purchase land. Over the two-year period following the initial debt offering, Brenda Peak, LLC did not acquire any real property. Rather, in that time, Brenda Peak, LLC completed work on two spec homes. Peak was unable to pay the $600,000 obligation, and appellants lost the money that they had loaned.

On 13 October 2011, appellants obtained a default judgment in state court against Peak and Brenda Peak, LLC in the amount of $744,578.11, plus ten percent interest from the date of the judgment. Peak and Brenda Peak, LLC are jointly and severally liable for the state court judgment. Peak filed a petition for relief under Chapter 7 of the Bankruptcy Code on 28 February 2012. On 25 June 2012, appellants filed an adversary proceeding to determine the dischargeability of the debt owed to them by Peak pursuant to 11 U.S.C. § 523(a)(2)(A).

On 20 August 2013, the bankruptcy court denied appellants' motion for summary judgment. However, based on the state court default judgment, the court significantly narrowed the issues for trial. The court determined that appellants had established that Peak was personally liable for the relevant debt and had also established the following elements of fraud:

(1) a false representation; (2) justifiable reliance on the representation; and (3) proximate cause of damages. The PPM is the document that the bankruptcy court found, based on the default judgment, was false and was relied upon by the appellants. The only issues that remained for trial were whether Peak knew that the representation was false when she made it and whether she intended to deceive appellants.

A trial was held on 6 November 2013. On 3 December 2013, the bankruptcy court entered judgment in favor of Peak and determined that the debt owed to appellants is dischargeable. The court entered an accompanying opinion stating that appellants had met their burden of proving that Peak knew her representation that induced appellants to invest was false, but that it was not made with the intent to deceive. Appellants timely filed a notice of appeal of the bankruptcy court's judgment on 13 December 2013.

## II. DISCUSSION

"Under 28 U.S.C. § 158(a), United States District Courts have jurisdiction to hear appeals of final judgments, orders, and decrees of Bankruptcy Courts. On appeal from the Bankruptcy Court, the district court acts as an appellate court and reviews the Bankruptcy Court's findings of fact for clear error, while it reviews the conclusions of law *de novo*." Singleton v. Countrywide Home Loans, Inc. (In re Singleton), 358 B.R. 253, 256 (D.S.C. 2006). Pursuant to Federal Rule of Bankruptcy Procedure 8013, the district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."

Appellants argue that the bankruptcy court committed clear error in concluding that the debt owed by Peak is dischargeable. "Section 523(a)(2)(A) of the Bankruptcy Code provides an

exception to discharge from debts obtained by fraud." <u>Boyuka v. White (In re White)</u>, 128 F. App'x 994, 997-98 (4th Cir. 2005) (per curiam) (unpublished). It states, in pertinent part, as follows:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt --
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
>
> (A) false pretenses, a false representation, or actual fraud . . . .

11 U.S.C. § 523(a)(2)(A).

> To establish that a debt should not be subject to discharge, a claimant must prove:
>
> (1) that the debtor made a fraudulent misrepresentation;
>
> (2) that the debtor's conduct was with the intention and purpose of deceiving or defrauding the creditor;
>
> (3) that the creditor relied on the debtor's representations or other fraud; and
>
> (4) that the creditor sustained loss and damage as a proximate result of the representations of fraud.

<u>In re White</u>, 128 F. App'x at 998. The burden is on the creditor to establish each element by a preponderance of the evidence. <u>Id.</u>; <u>see also</u> <u>O'Connor v. Booker (In re Booker)</u>, 165 B.R. 164, 168 (Bankr. M.D.N.C. 1994).

"[M]ost cases, including this one, revolve around th[e] second element: whether the debtor acted with the requisite intent to defraud." <u>In re White</u>, 128 F. App'x at 998. "A showing of reckless indifference to the truth is sufficient to demonstrate the requisite intent to deceive. Because a debtor will rarely, if ever, admit to acting with an intent to deceive, intent may be inferred from the totality of the circumstances." <u>Id.</u> at 998-99 (citations omitted).

A court reviewing a decision of the bankruptcy court may not set aside findings of fact unless they are clearly erroneous, giving "due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.  A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all of the evidence, is "left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (citation and internal quotation marks omitted).  "Deference to the bankruptcy court's factual findings is particularly appropriate on the intent issue '[b]ecause a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor.'" In re White, 128 F. App'x at 999 (alteration in original) (quoting Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d 134, 137 (1st Cir. 1992), abrogated on other grounds, Field v. Mans, 516 U.S. 59 (1995)).  So long as the bankruptcy court's account of the evidence is plausible, the district court may not reverse the decision simply because it would have weighed the evidence differently. McGahren v. First Citizens Bank & Trust Co. (In re Weiss), 111 F.3d 1159, 1166 (4th Cir. 1997) (citing Anderson, 470 U.S. at 573); Citizens Bank of Md. v. Broyles (In re Broyles), 55 F.3d 980, 983 (4th Cir. 1995) (same).  If there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Id.

In this case, the bankruptcy court determined that the PPM was false.  However, the bankruptcy court also found that Peak did not intend to defraud appellants.  At the 6 November 2013 trial, Peak testified that she did not believe that the loaned funds could be used only to purchase land (Trial Tr., DE # 5, at 69:8-71:9), and the bankruptcy court found that her belief

5

was consistent with her contacts with appellants Dwayne and Jannine LeBlanc and with their financial advisor Steve Peters (12/3/13 Order, DE # 1-1, at 6). Nevertheless, appellants contend that Peak's intent to deceive was demonstrated by the fact that she "funneled much of the loaned funds to herself and her other companies as soon as she received them . . . ." (Appellants' Br., DE # 17, at 7; see also id. at 3-4.) This argument is belied by Peak's testimony at the 6 November 2013 trial. For example, she testified in part that some of the loaned funds were deposited into the wrong account by her bookkeeper and that these errors were corrected upon discovery. (See 12/3/13 Order, DE # 1-1, at 5; Trial Tr., DE # 5, at 73:10-20, 89:21-91:1.) It is clear that the bankruptcy court credited Peak's testimony with regard to this issue.

Here, the bankruptcy court properly utilized its discretion in evaluating the totality of the circumstances and concluding that the requisite intent to defraud was not established in this case. The record does not leave this court with the definite and firm conviction that a mistake was made as to the determination that Peak did not intend to deceive appellants. The bankruptcy court made it evident that Peak was the clear winner in its assessment of the credibility of the four witnesses who testified in this case. In order to disturb this finding, the court would have to determine the credibility of witnesses whom it has never seen nor heard. The bankruptcy court undoubtedly was in a better position to judge the witnesses' credibility. The court does not find clear error in the bankruptcy court's decision to believe Peak over the other three witnesses, nor in its assessment of the documentary evidence[2] presented at trial.

---

[2] In fact, the court agrees with the bankruptcy court's finding that "the plan described in the PPM made little business sense" and that "the required monthly payments [to the investors] . . . would be problematic to make unless the property purchased was income producing." (12/3/13 Order, DE # 1-1, at 6.)

6

## III. CONCLUSION

For the foregoing reasons, the 3 December 2013 order of the bankruptcy court is AFFIRMED.  The Clerk is DIRECTED to close this case.

This 9 July 2014.

_____
W. Earl Britt
Senior U.S. District Judge